IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| STATIC CONTROL COMPONENTS, and STATIC CONTROL COMPONENTS EUROPE, INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 1:06CV00154 |
| MITSUBISHI KAGAKU IMAGING CORPORATION and FUTURE GRAPHICS, LLC, | ) ) ) ) | |
| Defendants. | ) ) | |

MEMORANDUM ORDER

TILLEY, District Judge

This matter is currently before the Court on Defendant Mitsubishi Kagaku Imaging Corporation's ("MKIC") motion for Partial Summary Judgment [Doc. #48]. For the reasons stated below, the Motion for Partial Summary Judgment [Doc. #48] is GRANTED in part and DENIED in part.

I.

This matter arises out of a dispute between Plaintiffs Static Control Components, Inc. ("SCC") and Static Control Components Europe, Inc. ("SCC UK")[1] and Defendants MKIC and Future Graphics, LLC regarding the production and supply of certain products used in the manufacture of aftermarket toner cartridges

---

[1]SCC and SCC UK will be referred to collectively as SCC.

for laser printers.  The relationship of the parties is governed in part by two different contracts, the 2004 Distribution Agreement (the "2004 contract") and the 2006 Product Supply Terms and Conditions (the "2006 contract"). The Amended Complaint asserts various causes of action against MKIC.  In short, SCC alleges that MKIC wrongfully terminated the 2006 contract, and a 10-year relationship with SCC, and affiliated with Future Graphics, a competitor of SCC.  MKIC filed the instant motion seeking entry of summary judgment on several of the claims in SCC's amended complaint.

II.

Summary judgment is proper only when, viewing the facts in the light most favorable to the non-moving party, there is no genuine issue of any material fact, and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Cox v. County of Prince William, 249 F.3d 295, 299 (4th Cir. 2001).  An issue is genuine if a reasonable jury, based on the evidence, could find in favor of the non-moving party.  Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); Cox, 249 F.3d at 299.  There is no genuine issue of material fact if the nonmoving party fails to make a sufficient showing on an essential element of its case as to which it would have the burden of proof at trial.  Celotex, 477 U.S. at 322-23.   In essence, summary judgment requires a determination of the sufficiency of the evidence, not a weighing of the evidence, and the analysis concerns "whether the evidence presents a sufficient

disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52.

A.

MKIC seeks dismissal of Count I of the Amended Complaint. Count I is a breach of contract claim in which SCC alleges that MKIC breached the confidentiality provision of the 2004 contract by selling co-developed products to third parties. MKIC asserts that SCC's claim fails under the plain language of the contract, which specifically allows MKIC to sell its products to third parties and further asserts that by allowing MKIC to sell its products to third parties, SCC has waived any claim to confidentiality associated with those products. [See Doc. # 49, at 6 (citing portions of the contract that allow MKIC to sell its products to parties other than SCC)]. SCC asserts that MKIC's sale of certain co-developed products, which SCC contends contain SCC's confidential proprietary information, to third parties violates the confidentiality provision of the contract.

The 2004 contract clearly provides that MKIC may sell its products to third parties. [2004 contract ¶ 1.1]. However, the contract also clearly provides that the parties agreed to protect confidential information from disclosure to third parties. [2004 contract ¶11.3.] Under Virginia law, which governs the 2004 contract, it is well established that contracts must be read as a whole and that courts should not treat any provision as meaningless if that clause can be reasonably interpreted with the remaining terms of the contract. Berry v. Klinger,

3

300 S.E.2d 792, 796 (Va. 1983); First American Bank v. J.S.C. Concrete Const., 523 S.E.2d 496, 501 (Va. 2000).

In this case, while the 2004 contract allows MKIC to sell its products to third parties, it also requires MKIC to protect SCC's confidential information. SCC has asserted that MKIC has sold certain "co-developed" products and that such sale violates the confidentiality provision. Allowing MKIC's interpretation that SCC waived any confidentiality solely by allowing MKIC to sell products to third parties would render the confidentiality provision meaningless, a result not allowed under Virginia law. MKIC's motion for summary judgment on Count I of the Amended Complaint is DENIED.

B.

MKIC also seeks summary judgment on Count III of the Amended Complaint, in which SCC asserts that MKIC has breached the covenant of good faith and fair dealing. SCC has asserted that MKIC negotiated the 2006 contract in bad faith and that such negotiations violate the covenant of good faith and fair dealing. Because the negotiations for the 2006 contract, which is governed by North Carolina law, necessarily preceded the execution of the contract, any covenant of good faith and fair dealing implied in the 2006 contract could not support SCC's claim. See Weyerhaeuser Co. v. Godwin Building Supply Co., 40 N.C. App. 743, 746, 253 S.E.2d 625, 627 (1979) (explaining among the terms implied in a contract is the "basic principle of contract law that a party who enters into an

4

enforceable contract is required to act in good faith and to make reasonable efforts *to perform his obligations under the agreement*") (emphasis added). Moreover, to the extent SCC is purporting to rely on the covenant of good faith and fair dealing implied in the 2004 contract in support of its claim, SCC has cited no authority to support the proposition that the negotiations of the 2006 contract were governed by duties implied in the 2004 contract.

SCC has also asserted that MKIC violated the covenant of good faith and fair dealing implied in the 2006 contract by delivering known defective goods to SCC while delivering goods to Future Graphics that were free of defects. In its summary judgment papers, MKIC asserts that such a damage claim is barred by the warranty provisions of the contract. [Doc. #49, at ]. According to the allegations in the Complaint, the only factual information in the record on this issue, SCC is not merely seeking damages for the value of the defective goods. Rather, SCC is seeking damages for harm allegedly caused by MKIC knowingly providing defective goods to SCC while providing goods without defects to SCC's competitor Future Graphics, thus allowing Future Graphics, and not SCC, to make subsequent sales to consumers. These damages would not be covered by the warranty provisions of the 2006 contract, and the motion for summary judgment on this claim is DENIED.

C.

MKIC seeks summary judgment on Count IV of the Amended Complaint in which SCC asserts that MKIC breached the 2006 contract by terminating the

5

contract without providing SCC notice in a timely fashion.

Under the 2006 contract, SCC submitted purchase orders to MKIC for OPC and toner on a monthly basis. [2006 contract ¶ 2.3]. Within five days of receipt of the SCC purchase orders, MKIC was required to either accept or reject a purchase order. [2006 contract ¶ 2.6]. If SCC did not receive notice that a purchase order had been rejected within that five day period, then the purchase order was deemed accepted. [2006 contract ¶ 2.6] In addition to these monthly purchase orders, SCC would "forecast" to MKIC its OPC and toner needs for two subsequent months and would also submit a "Horizon forecast" for an additional three-moth period. [2006 contract ¶¶ 2.3, 2.4].

The 2006 contract also contained a provision regarding contract termination: section 1.2 of the 2006 contract states in pertinent part: "These Product Supply Terms and Conditions may be terminated by either party upon written notice but shall remain in effect with respect to any *accepted purchase orders* at the time of termination." [2006 contract ¶ 1.2 (emphasis added)]. On February, 14, 2006, MKIC terminated the 2006 contract in writing.

SCC asserts that MKIC breached the 2006 contract by terminating the contract without providing adequate notice. As noted, the contract provision regarding termination in the 2006 contract clearly provides that any party may terminate the contract in writing and does not contain a notice provision. SCC appears to assert that the 2006 contract process for providing "forecasts" and

6

"Horizon forecasts" somehow creates an implied notice requirement. This position, however, is refuted by the plain language of the contract. While the contract specifies that termination would not impact accepted orders, there is no similar saving provision for "forecasts" or "Horizon forecasts." By notifying SCC in writing that it was terminating the contract according to its terms, MKIC cannot be found to have breached the terms of the written contract.

SCC also asserts that MKIC representatives made oral promises during the negotiations period for the 2006 contract that MKIC intended to remain SCC's primary supplier and that MKIC would not terminate the MKIC-SCC relationship. SCC asserts that such oral promises are enforceable because the contract does not contain an integration clause. Under North Carolina law, which governs the 2006 contract, it is well-established that "no verbal agreement between the parties to a written contract, made before or at the time of the execution of such contract, is admissible to vary its terms or to contradict its provisions." Borden, Inc. v. Brower, 284 N.C. 54, 60, 199 S.E.2d 414, 418 (1973) (citations omitted). Thus, any statements made prior to the execution of the contract could not support a breach of contract claim.

However, SCC also asserts that MKIC representatives made similar oral representations after the execution of the 2006 contract. In particular, SCC has asserted that MKIC made representations on both January 17 and January 19 that MKIC had no intention to "cut off" the supply of OPCs and toner to SCC. SCC

7

appears to assert that by promising it would not "cut off" SCC, MKIC effectively agreed to a modification of the termination provision of the 2006 contract to require sufficient notice of termination to allow SCC to replace MKIC as its supplier of OPCs and toner.

Under North Carolina law, it is well-established that a modification to a contract must be supported by adequate consideration. Brumley v. Mallard, L.L.C., 154 N.C. App. 563, 567-68, 575 S.E.2d 35, 38 (2002) ("A modification to a contract occurs if there is mutual assent to the terms of the modification and consideration supporting the modification"). At oral argument, SCC conceded that it was unaware of any new consideration flowing to MKIC that would support MKIC's alleged promise to modify the termination provision of the 2006 contract. MKIC's motion for summary judgment on the breach of contract claim regarding the termination provision is GRANTED.

D.

MKIC also seeks summary judgment on SCC's unfair and deceptive trade practice claim pursuant to Chapter 75 of the North Carolina General Statutes. MKIC asserts that SCC's Chapter 75 claim is based on MKIC's alleged breach of contract, and that a breach of contract – even an intentional breach accompanied by deceit – is not sufficient to support a claim for unfair and deceptive trad practices.

SCC's factual allegations, which are not contested by MKIC for purposes of

this motion, are as follows: (1) MKIC planned to end its relationship with SCC well before the 2006 contract was negotiated; (2) MKIC took deliberate steps to "weaken" SCC in order to make a successful transition to a business model in which MKIC distributed directly to remanufacturers; (3) MKIC planned to end its relationship with SCC "in a way that would cause the most disruption" to SCC's business; (4) MKIC was aware that SCC wanted to transition to other suppliers and assured SCC that such a transition would not be necessary so that MKIC could "cut off" SCC; (5) MKIC intended to "cut off" SCC "in order to maximize the damage inflicted on [SCC] by a sudden change in [SCC's] vendor relationships." The facts alleged by SCC, which are uncontested for purposes of this motion and assumed to be true, could constitute the "type of egregious or aggravating circumstances" sufficient to violate Chapter 75. S. Atl. Ltd. P'ship of Tenn. v. Riese, 284 F.3d 518, 535 (4th Cir.2001). As such, MKIC's motion for summary judgment on the unfair and deceptive trade practices claim is DENIED.

III.

For the reasons set forth above, it IS ORDERED THAT MKIC's motion for summary judgment on Count I of the Amended Complaint is DENIED, the motion for summary judgment on Count III of the Amended Complaint is DENIED, the motion for summary judgment on Count IV of the Amended Complaint is GRANTED, the motion for summary judgment on Count V of the Amended

9

Complaint is DENIED, and the motion for summary judgment on Count VI[2] of the Amended Complaint is GRANTED.

This the day of February 21, 2007

/s/ N. Carlton Tilley, Jr.<br>United States District Judge

---

[2] Count VI of the Amended Complaint purported to assert an equitable estoppel/detrimental reliance claim. At oral argument, counsel for SCC conceded that North Carolina law would not support this claim.